LORETTA LYNCH
Attorney General
VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division
SHINA MAJEED
Chief of Housing & Enforcement Section
TIMOTHY J. MORAN
Deputy Chief
*NOAH D. SACKS*
Trial Attorney
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
Ph: (202) 514-4737

MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
*TIMOTHY M. DURKIN*
*JOSEPH P. DERRIG*
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Ph: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA

Plaintiff,

v.

KEITH RIEXINGER, TAMRA RIEXINGER, and RIEXINGER ENTERPRISES, INC. d/b/a/ CROSSROADS CONSTRUCTION

Defendants.

No. 16-CV-03191- SMJ

COMPLAINT FOR VIOLATIONS OF THE FAIR HOUSING ACT, 42 U.S.C. § 3601, *et seq.*

## COMPLAINT

The United States of America alleges as follows:

## NATURE OF THE ACTION

1. This action is brought by the United States to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (the "Act"), 42 U.S.C. §§ 3601-3619. This action is brought on behalf of Northwest Fair Housing Alliance ("NWFHA"), pursuant to 42 U.S.C. § 3612(o), and is also brought pursuant to 42 U.S.C. § 3614(a).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. § 1345 and 42 U.S.C. §§ 3612(o) and 3614(a).

3. Venue is proper under 28 U.S.C. § 1391(b), because the acts and omissions giving rise to the claims alleged herein occurred in the Eastern District of Washington and because all Defendants reside in the Eastern District of Washington.

## SUBJECT PROPERTY

4. The subject property, known as Ashlynn Estates, is located at 2400-2404 N. Ridgeview Lane, Ellensburg, Washington, and consists of three, identical, nine-unit, non-elevator buildings. It is located approximately a mile from Central Washington University.

5. Each building has four ground story units and five second story units. Each unit consists of a large private bedroom with a locking keypad entry, built-in desk, walk-in closet, and full bathroom. Tenants share a common use kitchen, living room

and laundry room; there are no shared bathrooms. The three buildings share a common parking lot.

6. Defendants designed and constructed Ashlynn Estates to offer dormitory style housing. Consistent with that design, the units are leased out to individuals. A typical Ashlynn Estates lease states that “[t]he leased premises consists of the exclusive use and occupancy of the bedroom and the shared use of the common areas of the unit such as the as the living room(s), dining room(s) . . . kitchen(s), and hallways which are shared jointly and in common with the other Residents of the unit, if any . . . . [W]e intend to rent the other divided portions of the unit to other residents . . . . The maximum occupancy is established at one person per bedroom.” A typical lease has a twelve month term.

7. The marketing materials for Ashlynn Estates advise prospective tenants that they can “Rent a room for yourself (includes all utilities)” and state that: “These brand new 2 story houses feature 9 master bedroom suites, each with its own full bathroom and large walk-in closet. Each bedroom has a keypad lock on the door, a built in desk, and is fully insulated to give you a quiet place to retreat. The common areas include a large kitchen with granite countertops, living room with vaulted ceilings, and laundry room.”

8. Defendants also produced commercial grade videos promoting Ashlynn Estates, which reflect the dormitory style arrangement being offered. *See*

http://verse2.org/wp/riexinger-rentals-cribs/; http://verse2.org/wp/riexinger-rentals-home/

9. Defendants use the services of a professional property manager to market, rent, and manage Ashlynn Estates.

10. Defendants have admitted to the Department of Housing and Urban Development that Ashlynn Estates is “the functional equivalent of a college dormitory.”

11. The four ground floor units in each building and the public and common use areas appurtenant thereto, are “covered multifamily dwellings” within the meaning of 42 U.S.C. § 3604(f)(7)(B).

12. The Certificates of Occupancy for the dwelling units at Ashlynn Estates were issued between October 23, 2013, and January 8, 2015.

13. The dwellings at Ashlynn Estates were designed and constructed for first occupancy after March 13, 1991. Ashlynn Estates is subject to the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C).

**DEFENDANTS**

14. Defendants Keith Riexinger and Tamra Riexinger are the owners of the subject property. Defendants have owned the property since June 13, 2013.

15. Defendant Riexenger Enterprises, Inc., a Washington corporation, was the developer and original owner of the subject property until ownership was transferred to Defendants Keith and Tamra Riexinger on June 13, 2013.

16. Defendant Riexinger Enterprises, Inc., acting under the registered trade name Crossroads Construction, was the contractor responsible for the construction of the subject property. Defendant Riexinger Enterprises, Inc., was also responsible for the design of the subject property.

17. Defendant Keith Riexinger is the president, registered agent, and sole officer of Riexinger Enterprises.

18. Defendants Keith and Tamra Riexinger own rental properties other than Ashlynn Estates that may be covered "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(B).

## ALLEGATIONS REGARDING DEFENDANTS' DISCRIMINATORY CONDUCT

19. Northwest Fair Housing Alliance ("NWFHA") is a nonprofit corporation based in Spokane, Washington, and organized under the laws of the State of Washington. NWFHA's organizational mission is to eliminate housing discrimination and ensure equal housing opportunity for the people of Washington State through education, counseling, and advocacy.

20. On or about October 7, 2013, NWFHA found an advertisement on Craigslist for Master Bedroom Suites for rent in "Brand New Ashlynn Estates." The advertisement touted private rooms for rent, each with its own full bathroom, in new nine-bedroom houses within walking distance of Central Washington University. Common areas included a large kitchen, living room and laundry room.

21. On or about October 10, 2013, NWFHA sent a tester from its Spokane location to the subject property to conduct an accessibility site audit. The tester observed exterior barriers to accessibility including steps to the primary entrance doors and inaccessible door hardware. The tester was unable to view the interiors, as the buildings were still under construction.

22. On or about February 21, 2014, NWFHA sent the tester back to Ashlynn Estates to conduct a follow-up accessibility site audit of the property. The tester posed as a father interested in renting a room for his son who would be attending Central Washington University. The tester met with the property manager and was shown two ground floor units, one upstairs unit, and the common areas.

23. The tester observed interior and exterior barriers to accessibility at the property, including steps to the entrance doors of all three buildings, interior doorways that were too narrow for wheelchair passage, and a lack of accessible parking and accessible routes to entrances.

24. The property manager gave the tester an application package, which included a blank lease. The lease stated that "[t]he leased premises consists of the exclusive use and occupancy of the bedroom and the shared use of the common areas of the unit." The monthly rent was $600.00 and maximum occupancy was set at one person per bedroom.

25. The public use and common use portions of the subject property are not readily accessible to and usable by persons with disabilities, as required by 42 U.S.C. § 3604(f)(3)(C)(i). Specifically, the violations include, but may not be limited to:

a. there is no accessible route to building entrances because there are three steps at each entrance and because portions of the walkways to the building entrances have slopes that exceed the allowable amount;

b. there is insufficient maneuvering space at the building entrances;

c. there is no designated accessible parking; and

d. there are inaccessible round door knobs at the building entrances, the unit entry doors, and the laundry room doors.

26. All doors designed to allow passage into and within all premises within ground floor units at the subject property are not sufficiently wide to allow passage by persons with disabilities in wheelchairs, as required by 42 U.S.C. § 3604(f)(3)(C)(ii). Specifically, the violations include, but may not be limited to, the following:

a. In dwelling units, the clear opening width of the door to the bathroom measured 28 to 29 inches, which is less than the nominal 32 inches required; and

b. the opening to the walk-in closet measured 30 to 30.75 inches, which is less than the nominal 32 inches required.

27. The ground floor units at the subject property lack certain features of adaptive design required by 42 U.S.C. § 3604(f)(3)(C)(iii). Specifically, the violations include, but may not be limited to, the following:

a. The electrical outlets in the ground floor units and the outlet located above the kitchen counters are not located in accessible locations, as required by 42 U.S.C. § 3604(f)(3)(C)(iii)(II).

b. The subject property lacks reinforcements in bathroom walls for the later installation of grab bars as required by 42 U.S.C. § 3604(f)(3)(C)(iii)(III);

c. The subject property lacks usable bathrooms such that an individual in a wheelchair can maneuver about the space, as required by 42 U.S.C. § 3604(f)(3)(C)(iii)(IV). Barriers to usability include the lack of clear floor space at the sink, toilets and bathtubs, as required.

28. The defendants' discriminatory conduct frustrated NWFHA's mission and caused it to divert considerable resources. NWHFA diverted significant staff time and material resources because of Defendants' discriminatory conduct, including, *inter alia*, researching Ashlynn Estates, obtaining documents related to the property, conducting site visits, and preparing its administrative complaint to HUD. The NWFHA tester traveled over 700 total miles to conduct the site audits. At its own expense, NWFHA prepared an educational program to counteract the effect of Defendants' discriminatory practices in Ellensburg.

**HUD ADMINISTRATIVE PROCESS**

29. On or about On March 17, 2014, NWFHA filed an administrative complaint with the United States Department of Housing and Urban Development ("HUD"), pursuant to 42 U.S.C. § 3610(a), alleging that Defendants discriminated against persons with disabilities by failing to design and construct buildings that meet the accessibility guidelines required by the federal Fair Housing Act.

30. Pursuant to the requirements of 42 U.S.C. §§ 3610(a) and (b), the Secretary of HUD ("the Secretary") conducted and completed an investigation of the complaint filed by NWFHA, attempted conciliation without success, and prepared a final investigative report. Based on information gathered during the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause exists to believe that discriminatory housing practices had occurred. Accordingly, on or about September 14, 2016, the Secretary issued a Determination of Reasonable Cause and Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(2)(A), charging the Defendants with engaging in discriminatory housing practices in violation of the Act.

31. On or about September 29, 2016, Defendants elected to have the Charge of Discrimination resolved in a civil action filed in federal district court, pursuant to 42 U.S.C. § 3612(a).

32. Following the Notice of Election, the Secretary authorized the Attorney General to commence this civil action, pursuant to 42 U.S.C. § 3612(o).

**COUNT I**

33. Plaintiff realleges and incorporates by reference herein the allegations described in paragraphs 1 - 32, above.

34. Defendants have failed to design or construct the covered units at Ashlynn Estates in accordance with 42 U.S.C. § 3604(f)(3)(C). The public use and common use portions are not readily accessible to and usable by individuals with disabilities. The units do not contain the following features of adaptive design: (i) an accessible route into and through the dwelling; (ii) reinforcements in bathroom walls to allow later installation of grab bars; (iii) usable bathrooms such that an individual using a wheelchair can maneuver about the space; and (iv) accessible electrical outlets.

35. By failing to design and construct the dwellings in accordance with the Act, the Defendants made housing unavailable because of disability in violation of section 804(f)(1) of the Act, 42 U.S.C. § 3604(f)(1).

36. By failing to design and construct the dwellings in accordance with the Act, the Defendants discriminated in the terms, conditions, or privileges of the sale or rental of the Ashlynn Estates in violation of section 804(f)(2) of the Act, 42 U.S.C. § 3604(f)(2).

37. NWFHA is an "aggrieved person," as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of Defendants' conduct described above.

38. The Defendants' discriminatory actions and practices described above were intentional, willful, and taken in disregard for the rights of others.

**COUNT II**

39. Plaintiff realleges and incorporates by reference herein the allegations described in paragraphs 1 - 38, above.

40. The conduct of the Defendants described above constitutes:

a. A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619; or

b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619, which raises an issue of general public importance.

41. In addition to NWFHA, there may be other victims of the Defendants' discriminatory housing practices who are aggrieved person as defined in 42 U.S.C. § 3602(i) and who may have suffered injuries and damages as a result of the Defendants' actions and practices described above.

**PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that the Court enter an ORDER that:

1. Declares that the Defendants' policies and practices, as alleged herein, violate the Fair Housing Act;

2. Declares that the Defendants have engaged in a pattern or practice of discrimination in violation of the Fair Housing Act or have denied rights under the Fair Housing Act to a group of persons raising an issue of general public importance;

3. Enjoins the Defendants, their officers, employees, agents, successors and all other persons in active concert or participation with any of them, from:

a. Discriminating in the rental, or otherwise making unavailable or denying dwellings to renters, because of handicap in violation of 42 U.S.C.§ 3604(f)(1);

b. Discriminating against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of handicap in violation of 42 U.S.C. § 3604(f)(2);

c. Failing or refusing to bring the covered units and public and common use areas at Ashlynn Estates into compliance with 42 U.S.C. § 3604(f)(3)(C);

d. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct;

e. Failing or refusing to take such affirmative steps as may be necessary to prevent recurrence of any discriminatory conduct in the future, and to eliminate, to the extent practicable, the effects of their unlawful practices;

f. Designing and/or constructing any covered multifamily dwellings in the future that do not contain the accessibility and adaptability features required by 42 U.S.C. § 3604(f)(3)(C);

4. Assesses a civil penalty against each Defendant to vindicate the public interest in an amount authorized by the Fair Housing Act, 42 U.S.C. § 3614(d)(1)(C), and 28 C.F.R. § 85.3(b)(3);

5. Awards monetary damages pursuant to 42 U.S.C. §§ 3612(o)(3), 3613(c)(1) and 3614(d)(1)(B) to the NWFHA and to any other person harmed by Defendants' discriminatory conduct and practices; and

//

//

//

//

//

//

//

//

//

//

//

6. The United States further prays for such additional relief as the interests of justice may require.

Dated: October 31, 2016.

LORETTA LYNCH
Attorney General

*/s Vanita Gupta*
VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

MICHAEL C. ORMSBY
United States Attorney

*/s Timothy M. Durkin*
TIMOTHY M. DURKIN
Assistant United States Attorney

*/s Shina Majeed*
SAMEENA SHINA MAJEED
Chief

*s/Joseph P. Derrig*
JOSEPH P. DERRIG
Assistant U.S. Attorneys
United States Attorney's Office
P.O. Box 1494
Spokane, WA 92210-1494
Ph: (509) 353-2767
USAWAE.JDerrigECF@usdoj.gov
USAWAE.TDurkinECF@usdoj.gov

*s/ Noah D. Sacks*
TIMOTHY J. MORAN
Deputy Chief
NOAH D. SACKS
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W.
Northwestern Building, 7th Floor
Washington, D.C. 20530
Tel: (202) 514-4737
Fax: (202) 514-1116
noah.sacks@usdoj.gov